UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRYAN FRITZ, #525550,

        Plaintiff,

v.

DONALD WEIKUM,

        Defendant.

_____/

Case No. 2:21-cv-50

Hon. Robert J. Jonker
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I.   Introduction

This Report and Recommendation (R&R) addresses Plaintiff Fritz's motion for summary judgment (ECF No. 19) and Defendant Weikum's motion for summary judgment (ECF No. 31).

Plaintiff — state prisoner Bryan Fritz — filed suit pursuant to 42 U.S.C. 1983 on March 15, 2021.  In his verified complaint, Fritz alleged that while confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Defendant Dr. Donald Weikum, a dentist at the facility, acted with deliberate indifference to his serious medical needs.  Specifically, Fritz alleged that Dr. Weikum diagnosed him with an impacted tooth and pericoronitis[1] during an August 7, 2019 appointment, but that he delayed treatment through September 6, 2019.

---

[1]    Pericoronitis is swelling and infection around the crown of a tooth, usually a lower wisdom tooth. *See Pericoronitis*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrP0500007982 (last visited Jan. 31, 2022); *Pericoronitis*,

Fritz now moves for summary judgment, arguing that his diagnoses and Dr. Weikum's subsequent delay in treatment are sufficient to establish deliberate indifference. Dr. Weikum also moves for summary judgment, arguing that Fritz has not established that he had a serious medical need, nor that Weikum disregarded that need. In addition, Dr. Weikum asserts that he is entitled to qualified immunity where he did not violate Fritz's constitutional rights.

The undersigned respectfully recommends that the Court deny both motions for summary judgment because there are genuine issues of material fact concerning whether Fritz's pericoronitis constituted a serious medical need, and whether Dr. Weikum was deliberately indifferent by failing to treat the pericoronitis with medication upon diagnosis.

**II.    Uncontroverted**

Both parties rely substantially on Fritz's medical and dental records in setting forth the pertinent facts. These records can be summarized as follows:

- November 28, 2018: Fritz kites Dental about swollen and bleeding gums. (ECF No. 20-1, PageID.89 (Fritz's Dental Summary Report as of 11.12.19).) Fritz requests his annual cleaning. (*Id.*) Fritz is placed on the exam waiting list. (*Id.*)

---

Colum. Coll. of Dental Med., https://www.dental.columbia.edu/patient-care/dental-library/pericoronitis (last visited Jan. 31, 2022).

- April 17, 2019: Fritz has his teeth cleaned by a dental hygienist and then examined by Dr. Sergio CallejaBlanco, who finds that Fritz has generalized gingivitis,[2] and interproximal caries.[3] (*Id.*, PageID.89-90.)

- June 4, 2019: Fritz is called to dental for fillings but complains of pain in his upper left teeth. (*Id.*, PageID.90.) Dr. CallejaBlanco does a focused examination of those teeth and explains to Fritz that the only thing he finds is inflammation of Fritz's gums. (*Id.*) Dr. CallejaBlanco tells Fritz to kite Dental again if his pain continues and reschedules Fritz's appointment for fillings. (*Id.*)

- June 14, 2019: Dr. CallejaBlanco removes decay from two of Fritz's teeth (tooth #30 and tooth #31) and fills the cavities. (*Id.*, PageID.90-91.)

- June 27, 2019: Dr. Weikum conducts a focused exam of Fritz's tooth #18. (*Id.*, PageID.91.) Fritz complains of bleeding gums, and Dr. Weikum has him demonstrate how he flosses. (*Id.*) Fritz is not using the correct flossing technique, so Dr. Weikum shows him how to floss properly, and tells him that the bleeding should subside within a week of proper flossing. (*Id.*)

---

[2] Gingiva is "[t]he dense fibrous tissue and overlying mucous membrane enveloping the alveolar process of the upper and lower jaws and surrounding the necks of the teeth." *Gingiva*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrG0900001288 (last visited Jan. 31, 2021). Gingivitis is "[i]nflammation of the gingiva as a response to bacterial plaque on adjacent teeth." *Gingivitis*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrG0900001444 (last visited Jan. 31, 2022).

[3] Caries is the "[m]icrobial destruction or necrosis of teeth." *Caries*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrC0100011854 (last visited Jan. 31, 2022).

- July 31, 2019: Fritz complains of pain around tooth #32. (*Id.*) Dr. Weikum examines the area, and determines that if Fritz has pericoronitis, it is "very slight." (*Id.*) Dr. Weikum scrapes the tooth and does not find plaque or excessive bleeding. (*Id.*, PageID.92.) He finds that the tooth is slightly impacted, and believes the soreness resulted from Fritz digging around in the area. (*Id.*) Dr. Weikum notes that this was the first time documenting a problem with tooth #32. (*Id.*)

- August 5, 2019: Fritz complains of pain in the lower right side of his mouth and was scheduled for an evaluation. (*Id.*)

- August 7, 2019:[4] Dr. Weikum conducts another examination of the area surrounding tooth #32 and determines that Fritz has pericoronitis and needs to have both tooth #32 and tooth #1 removed. (*Id.*) Dr. Weikum makes a request to have the teeth removed. (*Id.*; ECF No. 20-3, PageID.99 (Oral Surgery Request).)

- August 14, 2019: Fritz complains that his symptoms are worsening. (ECF No. 20-1, PageID.92.) A dental assistant notes that Dr. Weikum has already put in a request to have Fritz's problem teeth removed. (*Id.*, PageID.93.)

- September 6, 2019: Fritz complains of pain and swelling in his lower right teeth, preventing him from eating and sleeping. (*Id.*) Dr. Shannon Arnett conducts an oral examination and finds swelling and redness around tooth #32.

---

[4] According to Fritz, Weikum noted during this appointment that it would likely be months before the teeth were extracted. (ECF No 1, PageID.10.)

4

(*Id.*) Dr. Arnett notes that Fritz was already on the list for oral surgery to extract the tooth and determines that Fritz does not qualify for endodontic[5] treatment. (*Id.*) Dr. Arnett then prescribes Fritz ibuprofen and an antibiotic. (*Id.*)

- September 16, 2019: Fritz complains of pain, swelling, and fluid coming from his gums. (*Id.*, PageID.94.)

- September 17, 2019:[6] Dr. Weikum conducts another examination around tooth #32 and removes a piece of food from Fritz's gums. (*Id.*) Dr. Weikum notes that Fritz is scheduled for an extraction and recommends that Fritz takes ibuprofen and rinses his mouth with warm saline after eating. (*Id.*)

- September 30, 2019: Fritz complains that his gums are starting to bleed again and that the effects of the pain medication are beginning to wear off. (*Id.*)

- October 2, 2019: Dr. Chad Fegan conducts an urgent oral examination and notes that the area around tooth #32 looks the same as it did at Fritz's last visit. (*Id.*, PageID.95.) Dr. Fegan again notes that Fritz is scheduled for an extraction soon, and then irrigates the area with clorohexadine to relieve Fritz's symptoms. (*Id.*)

- October 8, 2019: Fritz complains of pain in tooth #32. (*Id.*)

---

[5] Endodontics is "a field of dentistry concerned with the biology and pathology of the dental pulp and periapical tissues." *Endodontics*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrE1400002199 (last visited Jan. 31, 2022). In other words, Fritz did not qualify for treatment focused on the root of his tooth.

[6] Fritz says that during this appointment, Dr. Weikum noted that the pericoronitis was too advanced for antibiotics to be effective. (ECF No. 1, PageID.12.)

- October 9, 2019: Dr. Jesaka Davitt-Webster examines the tooth and notes redness and inflammation of the gingiva. (*Id.*) Dr. Davitt-Webster irrigates the area with clorohexadine. (*Id.*)

- November 7, 2019: Fritz's tooth #1 and tooth #32 are surgically extracted. Dr. Ronnie Sorrow notes the presence of pericoronitis. (ECF No. 20-9, PageID.114.) Dr. Sorrow notes no surgical complications and administers various medications. (*Id.*)

- November 13, 2019: Fritz is seen for a post-operative examination. (*Id.*, PageID.116.) Dr. Davitt-Webster notes that there is slight redness, but no swelling, and Fritz reports no pain. (*Id.*) After the examination, Dental receives an earlier complaint from Fritz regarding his gums bleeding. (*Id.*)

- November 25, 2019: Fritz complains of swelling, bleeding, and "smell of infection." (*Id.*) Dr. Davitt-Webster completes an examination, during which Fritz complains of a lump in his throat. (*Id.*) Dr. Davitt-Webster notes that the surgical site is healing normally, but that the right tonsil is "slightly red and slightly larger than [the] left tonsil," and instructs Fritz to kite Medical to address the throat pain. (*Id.*)

- December 23, 2019: Fritz kites Dental, and Dental tells him that he has been cleared of dental issues and is to see Medical going forward. (*Id.*)

- June 30, 2020: Fritz is seen by an ear, nose, and throat specialist after complaining of hoarseness and difficulty swallowing. (ECF No. 20-10, PageID.120.) Dr. Stephan Kirkner notes that Fritz has grossly hypertrophic

6

pharyngeal tonsils[7] and notes that if future tests point to the tonsils as the source of Fritz's complaints, a tonsillectomy may be appropriate. (*Id.*) Dr. Kirkner also notes that chronic sinus disease may be the source of Fritz's complaints. (*Id.*)

In addition to the appointments reflected in the dental and medical records provided to the Court, Fritz says that on September 17, 2020, approximately one year after his pain began, he underwent a biopsy of his tonsil, which came back negative.[8] (ECF No. 1, PageID.14.) And on February 9, 2021, Fritz says that a nurse practitioner prescribed him more antibiotics for his throat. (*Id.*) On March 2, 2021, after Fritz's symptoms had not improved, health care staff decided that Fritz needed to undergo additional testing. (*Id.*)

### III. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. It obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated

---

[7] Hypertrophy describes the "[g]eneral increase in bulk of a part or organ, not due to tumor formation." In other words, the specialist told Fritz that his tonsils were enlarged. *Hypertrophy*, Stedman's Online, https://stedmansonline.com/content.aspx?id=mlrH2500007022 (last visited Jan. 31, 2022).

[8] Fritz does not elaborate on what he means by "negative," but presumably, he means that the biopsy did not indicate the presence of any disease.

when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Id.* at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care, or for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

8

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). There, the court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner.

9

> Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "consciously expos[ed] the patient to an excessive risk of *739 serious harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); Brock v. Crall, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

According to Fritz, Dr. Weikum acted with deliberate indifference to his serious medical needs by declining to administer pain medication or antibiotics to treat his pericoronitis. (ECF No. 20, PageID.84-85.) In contrast, Dr. Weikum argues that pericoronitis is not a serious medical condition, and that he was not deliberately

11

indifferent because he repeatedly examined Fritz and put in a request for extraction as soon as he realized Fritz's tooth was impacted.[9]  (ECF No. 31-1, PageID.237, 243.)

In most deliberate indifference cases involving pericoronitis, the plaintiff's complaint is that the dental provider administered antibiotics and pain medication instead of making a request for extraction. *See, e.g.*, *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (finding an issue of material fact as to whether dentist was deliberately indifferent by waiting three weeks to refer plaintiff to an oral surgeon for extraction though she prescribed painkillers and antibiotics in the meantime); *Mosby v. Cavey*, 686 F. Supp. 2d 868, 870-71, 876-77 (W.D. Wis. 2010) (finding an issue of material fact as to whether defendants were deliberately indifferent by waiting months to refer plaintiff to oral surgeon for extraction even though they treated his pericoronitis with amoxicillin and ibuprofen).

To Dr. Weikum's credit, he made a request for Fritz's problem teeth to be extracted the day that he noticed Fritz's tooth #32 was impacted and confirmed that Fritz had pericoronitis. (ECF No. 20-1, PageID.92.) And Dr. Weikum examined Fritz four times between July 27, 2019 and Fritz's transfer for extraction on October 2, 2019. (*Id.*, PageID.91-94.) Nearly every time Fritz sent a kite to Dental regarding

---

[9] Dr. Weikum's brief also argues, albeit briefly, that Fritz has not established that he was a state actor. Weikum emphasizes instead that Fritz's complaint regards him as an employee of "Corizon Medical Services." (ECF No. 31-1, PageID.242.) This argument is wrong, especially considering Weikum's subsequent claim of qualified immunity. *See West v. Atkins*, 487 U.S. 42, 56 (1988) ("In the State's employ, respondent worked as a physician at the prison hospital fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated. [Respondent] must be considered to be a state actor.").

12

his concerns, he was seen by Dr. Weikum or another dentist. (*Id.*) Throughout these examinations, Dr. Weikum demonstrated how to properly floss, extracted bits of food from Fritz's gums, recommended an increased ibuprofen dosage to manage the pain and recommended a saline rinse after meals. (*Id.*) But Dr. Weikum did not treat Fritz's pericoronitis with pain medicine or antibiotics, despite his alleged awareness that it would be a matter of months before Fritz's teeth would be extracted after making the request. (ECF No. 1, PageID.10.) Without this treatment, Fritz endured pain and swelling around his impacted tooth for another month before a different dentist prescribed antibiotics and pain medication to treat the infection. (ECF No. 20-1, PageID.92-93.)[10]

Turning first to the objective component of Fritz's claim, the undersigned finds that Fritz has put sufficient evidence on the record to create a genuine issue as to whether his pericoronitis was a serious medical need. The Sixth Circuit has previously recognized that "dental care is one of the most important needs of inmates," *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir.1980)), and that among dental conditions that constitute serious medical needs are those resulting in an inmate's inability "to engage in normal activities" such as eating, *id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)). In the month between Dr. Weikum informing Fritz that

---

[10] The undersigned acknowledges that Fritz implies that the delay in administering antibiotics also lead to a persisting throat infection. However, the medical records do not reflect such causation. As such, the undersigned considers the pain Fritz endured prior to receiving antibiotics and pain medication, and not the throat infection, as the detrimental effect of the delay.

13

he had pericoronitis and Dr. Arnett prescribing antibiotics and pain medicine to treat the condition, Fritz sent multiple kites marked "urgent" and complaining of pain surrounding his impacted tooth. (ECF No. 20-1, PageID.92-93.) In his September 6, 2019 kite to Dental, Fritz specifically said that the pain had prevented him from eating or sleeping for over a day. (*Id.*, PageID.93.) The undesigned finds this is sufficient to create a genuine issue of fact concerning whether Fritz's pericoronitis constituted a serious medical need, and therefore turns to the issue of deliberate indifference.

The undersigned finds that Fritz has also put sufficient evidence on the record to create a genuine issue of fact as to whether Dr. Weikum acted with deliberate indifference. Fritz's dental records clearly reflect that Dr. Weikum noted the potential presence of pericoronitis around Fritz's tooth during the July 31, 2019 examination, and the definitive presence of pericoronitis during the August 7, 2019 examination. (ECF No. 20-1, PageID.91-92.) During both appointments, Weikum noted that Fritz was in pain. (*Id.*) Yet Dr. Weikum chose not to administer treatment beyond scraping the tooth and putting in a request for the tooth to be extracted, even knowing, per Fritz's verified complaint, that it would likely be months before his extraction if Weikum's request was approved. (ECF No. 1, PageID.10.)

Construing the facts in *the light most favorable to Fritz*, a reasonable jury could find that Dr. Weikum acted with deliberate indifference by failing to prescribe antibiotics or pain medicine to treat Fritz's pericoronitis, leaving him to endure significant pain for a period of several weeks. *See, Thorne v. Cuevas*, No. 3:09CV1716

SRU, 2012 WL 1050056, at *12-13 (D. Conn. Mar. 28, 2012) (denying summary judgment for dentist who did not prescribe medication to manage pain resulting from an impacted tooth). But construing the facts in *the light most favorable to Dr. Weikum*, a reasonable jury could also find that Dr. Weikum's decision not to prescribe antibiotics or ibuprofen when he first confirmed that Fritz had pericoronitis did not constitute deliberate indifference where Dr. Weikum continued to monitor the condition and immediately requested extraction of the impacted tooth. *See Graham v. Hurst*, No. 5:13-CT-3109-F, 2015 WL 670321, at *4 (E.D.N.C. Feb. 17, 2015) (granting summary judgment where defendant-dentists examined plaintiff, determined he had pericoronitis, and proceeded with teeth cleanings and other non-surgical, non-pharmaceutical treatments).

IV. **Qualified Immunity**

Dr. Weikum also argues that he is entitled to summary judgment on qualified immunity grounds. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v.*

16

*Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle,* 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna,* 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra,* at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra,* at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra,* at 309 (quoting *Anderson, supra,* at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby,* 138 S. Ct. 577, 589–90 (2018).

It is clearly established that dental needs may constitute serious medical needs, and that deliberate indifference to serious medical needs violates the Eighth

17

Amendment. *See McCarthy*, 313 F. App'x at 814. Because the undersigned finds that there are genuine issues of material fact as to whether Fritz's pericoronitis constituted a serious medical need, as well as whether Dr. Weikum acted with deliberate indifference to that need, Dr. Weikum is not entitled to qualified immunity at this stage of the case.

## V.     Recommendation

The undersigned respectfully recommends that the Court deny both motions for summary judgment because there are genuine issues of material fact concerning whether Fritz's pericoronitis constituted a serious medical need, and whether Dr. Weikum was deliberately indifferent by failing to treat the pericoronitis with medication upon diagnosis.

Dated:   February 8, 2022                        /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).